## UNITED STATES v. RIGANTO.
### Cr. No. 5380.

United States District Court
E. D. Virginia, Richmond Division.
April 22, 1954.

William F. Davis, Asst. U. S. Atty., Norfolk, Va., for the government.

H. Wise Kelley, Fairfax, Va., Lytton H. Gibson, Falls Church, Va., for defendant.

HUTCHESON, District Judge.

A motion has been made by the defense for a judgment of acquittal. The motion has been argued ably by counsel both for the defense and for the Government, and I am now prepared to pass upon that motion. Before doing so, however, there are certain observations

which I feel it not improper for the Court to make, in order that you may understand the reasons which prompt the Court in arriving at its conclusions.

As you know, this case charges a violation of the income tax law in that the indictment alleges the defendant, for the purpose of evading and with the intention of evading the payment of taxes imposed by law, fraudulently, that is, with intent to defraud the Government, filed false tax returns for the years 1945 and 1946. By reason of the location of the Office of the Collector of Internal Revenue for this District being in Richmond, it has fallen to my lot to try a number of cases charging similar violations of the income tax law. To be personal for a moment, I have served at various times in the capacity of United States Attorney and later of Judge. In the last few years I have observed with interest a change that has taken place in the nature of proof offered to support the charge of the prosecution in many of these cases charging tax fraud. This change has caused me some concern by what appears to be a preference to introduce proof to show understatement of income and fraudulent intent by methods other than by direct evidence. Of course, it is necessary in some cases that the Government proceed by indirect methods. This evidence consists of proof undertaking to show income of the taxpayer computed upon what is referred to as the net worth increase or bank deposits and expenditures methods or a combination of both. The latter is employed here. Basing my observation upon a number of cases during the past few years, it would seem that the use of one or both of these methods has been employed through preference at times when direct evidence is available.

The views I hold concerning this kind of proof have been so aptly stated by one of the appellate courts that I shall quote from that opinion, where it reads as follows:

"This is another of the growing list of criminal cases in which the government, having no or little direct evidence of defendant's guilt to offer and endeavoring to prove it by circumstantial evidence, attempts to do so by what may be called the net worth and expenditures method of proof. In this attempt, unless the greatest care is taken by the district judge to prevent it, there is danger of the case being tried on a theory which, keeping to the ear the promise that a defendant is presumed innocent until his guilt is established beyond a reasonable doubt, breaks it to the hope by allowing a series of theoretical estimates and computations as to defendant's income to take the place of proof of it.

"Sometimes conclusions from those computations and estimates are allowed to invade the province of the jury and furnish the basis for a conviction not upon evidence of facts but upon speculation and theorizing by the government's witnesses as to what the facts really are.

"Sometimes, without adhering to the essentials of the method, that the net worth at the beginning as well as the end of the period be shown, the proof comes in and the case is submitted with a complete gap in the proof as to the beginning of the period.

"This kind of latitudinous allowance of the admission and use of conclusions as evidence and the submission of the case to the jury without a scrupulous adherence to the theory, has resulted in a tendency to accept, if not in the complete acceptance of, the idea that in a case tried by this method, ordinary rules of proof may be relaxed if not disregarded. Further and more prejudicial to a defendant, there has grown up a kind of ancillary theory that the government, by introducing proof of deposits, expenditures, etc., having put up what it calls a *prima facie* case, the defendant finds himself jockeyed out of the position the law affords him, of insisting that the government establish his guilt by legal and credible evidence beyond a reasonable doubt. This is accomplished by requiring him to prove himself innocent by assuming the burden of overcoming the prejudicial effect of the mass of exhibits, estimates, conjectures, and con-

clusions which the government has been allowed to get into the record, upon the apparent theory that it is up to the defendant to explain all of it away as part of his burden to prove his innocence.

"This court and other courts have, in many cases, pointed out the dangers attending trials conducted in this way. Some of them have at times seemed to be more concerned with easing the difficulties attending the proof of guilt by this method than with preserving unimpaired the constitutional rights of a defendant, the fundamental safeguards and guarantees of his liberty. Most of the courts, however, confronted with the situation which this kind of case presents, have withstood all attacks upon, and have held fast to, constitutional principles, including the fundamental premise upon which criminal trials proceed, that the defendant is presumed innocent until his guilt is established by legal and admissible evidence beyond a reasonable doubt."

"Because of the dangers and difficulties inherent in this kind of criminal proceeding, we have scrutinized the record with the greatest care to determine whether appellant's claim, that no case was proved and no verdict should have been returned against him, is correct, and we have done this notwithstanding the fact that defendant did not renew his motion for a directed verdict at the conclusion of the whole case.

"Unfortunately for the defendant's position that, because of the method of proof employed, legal evidence is lacking upon which to find him guilty, his willingness to cooperate with the government agents in their many conferences and discussions with him on the theory, as he claims, that he was of the opinion that, instead of laying a predicate to judge him out of his own mouth, he and they were trying to correctly ascertain and straighten his tax liability out, stands strongly in his way. For it has placed him in the position of making many statements to which the Government can and does point as admissions in support of their theory, with the result that, everything considered, it may not be said as matter of law that the record is wholly without evidence to support the verdict."[1]

Under the statute, the tax agents, in computing net income, are required to use the method of accounting regularly employed in keeping the books of the taxpayer, but if no such method of accounting has been employed, or if the method does not clearly reflect the income, the computation may be made by such method as in the opinion of the Commissioner does clearly reflect the income. That is the statutory basis upon which these methods have been approved. Of course, appellate courts lay down rules of law which control the trial courts, and the various appellate courts have had before them on several occasions cases dealing with sufficiency of proof by the indirect or circumstantial evidence method. It appears that there is not a uniformity of opinion among the courts, either appellate or trial, as to the precise nature of proof which should be required in order to sustain a conviction. It is only comparatively recently that the question has been before the courts.

A heavy primary responsibility of safeguarding the fundamental rights of the Government and of the accused rests upon the trial court. The appellate court, with only a written record of the trial and the arguments of counsel before it, without an opportunity to weigh the testimony as it falls from the lips of witnesses, may easily fail to comprehend the insignificance of some bit of evidence when considered in relation to the full context, or the converse may be true. The result is that the records on appeal often fail to reflect clearly the nature of facts disclosed at the trial. While the accused has the right to appeal from a conviction and the Government has no such right, it has been repeatedly said that when circumstances make a motion for a directed verdict for the defendant

1. Demetree v. U. S., 5 Cir., 207 F.2d 892.

proper, the duty to grant it is equal to the duty to deny the motion when it is not well founded.

The questions presented in many such cases are difficult. There is firmly embedded in the law the principle that the accused is presumed innocent until his guilt is established beyond a reasonable doubt. He may not be found guilty upon speculative theory or conjecture. Where circumstantial evidence is relied upon, as in this case, such evidence should be scrutinized carefully. It must be clear, convincing and inconsistent with any reasonable hypothesis of innocence. Until guilt is so proven, the presumption of innocence applies at every stage of the trial.

It may sound plausible to contend that the taxpayer knows better than the Government the assets owned at a particular time and the amount of his income for a given period, but this is to ignore the important rule of law concerning the burden of proof.

I do not say that in some cases it is not proper to resort to some method such as used here. Upon the contrary, in some cases it is the only means by which a tax evader may be held accountable. Reference has been made to the Stinnett case,[1] which I tried. Reference was also made to the Jelaza case,[2] which I did not try. Both arose in this District. In both cases, as well as in a number of others tried in this District, circumstantial evidence was relied upon and approved by the trial court, but the circumstances were different from those here being considered.

With these thoughts in mind we come to the evidence before the Court to be considered in this case. As I stated a while ago, the Commissioner has discretion to use a method other than the bookkeeping method regularly employed by the taxpayer only when such method employed by the taxpayer does not clearly reflect the true income. I have heretofore ruled, and I adhere to that ruling, that the burden is upon the Government to show, before resorting to another method, the inadequacy of the books and records employed by the taxpayer. The Government must also show that the net worth method, the bank deposits method, or whatever other method is adopted, does reasonably reflect the income of the taxpayer. In meeting that burden, the Government must introduce evidence, other than its own computations, to discredit the books and records of the taxpayer, such as proof of unrecorded transactions, or internal evidence within the books themselves showing incompleteness or inaccuracy.

It is my view of the evidence in this case, considered as a whole, that the Government has failed in both particulars. It is true there was some testimony in the early hours of the trial to the effect that no set of books was set up for the business at Virginia Beach. As I recall there was no other criticism of the books and records kept by the taxpayer. As the trial proceeded it was developed that the Virginia Beach business was what might be called a paper route, and there are few books which could be kept except to show the amount paid to the Norfolk Newspapers, Incorporated, for the papers, and the amount of net cash received from sales. There has been no showing that there was any variance between the amount reported from that venture as income and what would be reflected by an investigation. An inquiry of the newspaper company would have revealed the total purchases during the time and simple arithmetic would have shown the maximum profits realized. The record is silent as to any effort in that direction to discredit the returns. It is true that in 1945 the defendant failed to report income from the Virginia Beach venture, but for 1946, before any investigation started, he reported the 1945 income along with that for 1946, certainly negativing or at least not indicating any intention to defraud.

**2.** Stinnett v. U. S., 4 Cir., 173 F.2d 129.

**3.** Jelaza v. U. S., 4 Cir., 179 F.2d 202.

 There was a statement by the agent, in a general way, to the effect that the taxpayer said the bank deposits represented money from his business and he had no cash on hand. I have considered that testimony carefully, and there was such a statement made, but the agent in his testimony further admitted that actually there was cash on hand in the form of bank deposits, about $9,000 on one year and about $12,000 on the other. He also showed there were loans made to the taxpayer during the period involved and other assets were held. Furthermore, the written report of the agent made seven years ago does not contain this statement and there was no stenographic transcript of the conversation. I mention that because you will readily understand that unless, at the beginning of the period under investigation, the correct amount is established, the theory as to income built up by the net assets or bank deposits method falls because it has no proper base upon which it is founded. It is evident from the testimony in this case there was not a proper starting point insofar as the bank deposits and expenditures method is concerned. If, in such circumstances, the case should be submitted to the jury and they should, by possible chance, arrive at a verdict of guilty, they could do so only upon conjecture, theory or speculation. When such circumstances exist, it is the duty of the trial court, when an issue of this kind is made up by motion, to sustain the motion.

Unless the Government proves the necessity for exercising a discretion in resorting to such method and then submits sufficient proof to show that the method reasonably and accurately reflects the income of the taxpayer, the duty is upon the Court to grant a motion for judgment of acquittal and I shall do so in this case.

Now I want to say this lest what I have said be considered as a criticism of the prosecution. I desire to make it clear that it is not directed at the United States Attorney. I am well aware of the fact that since the 1949 amendment to the Judicial Code, responsibility for prosecution has been transferred elsewhere. Nor is criticism directed at the investigative agent who fairly and impartially reports the result of his investigation and testifies to the facts as he knows them. In one sense, I do not intend my comments as criticism but as my reasons for concluding that the motion should be granted. The Court has no control over the type of evidence offered. It may only rule upon evidence when presented, with or without comment.

 I felt that in view of the fact that I have had a number of cases quite similar to this, it would be no more than proper to explain in some detail my views concerning the requirements on the part of the Government in cases of this type. In previous cases I have expressed similar views but in less detail. I might add that what I have said in effect is simply that the evidence at this stage is not sufficient to show a prima facie case of guilt of the defendant, and it follows that the jury should return a verdict of not guilty as directed by the Court in accordance with the Court's action on the defendant's motion for judgment of acquittal.