MARTIN COOPERBERG and DORIS COOPERBERG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cooperberg v. Commissioner
Docket No. 7669-74.
United States Tax Court
T.C. Memo 1979-102; 1979 Tax Ct. Memo LEXIS 425; 38 T.C.M. (CCH) 473; T.C.M. (RIA) 79102; March 21, 1979, Filed David A. Pravda, for the petitioners. Larry Kars, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Martin Cooperberg Year
Deficiency
Sec. 6653(b) [1]
1968
$31,405.87
$15,702.94
1969
10,389.32
5,194.66
*427 The issues for decision are: (1) Whether respondent sent the statutory notice of deficiency to an address other than Martin Cooperberg's last known address with the result that we lack jurisdiction over part of this case; (2) Whether petitioners were deprived of due process in that respondent did not give them a hearing before assessment; (3) Whether petitioners understated their income for the years in issue; (4) Whether any portion of the underpayment in tax was due to fraud on the part of Martin Cooperberg; (5) Whether the statute of limitations bars assessment and collection of the deficiencies; and (6) Whether petitioner Doris Cooperberg is relieved of liability for tax for the years in issue as an "innocent spouse" under section 6013(e). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners, Martin and Doris Cooperberg (hereinafter Martin and Doris), husband and wife, resided in Holliswood, New York, at the time of filing the petition herein. They filed joint tax returns for the years at issue. Martin *428 and Doris were married in 1961. Periodically, in 1968 and early 1969, they were separated. They had two children, the second being born in 1969. In 1968, they purchased a house as joint tenants.
Martin had a "breakdown" and received psychiatric care from March to May or June, 1968, and from the latter part of 1968 to the middle of 1969. Martin is a 1955 graduate of the Massachusetts Institute of Technology and a 1959 graduate of New York University Dental School, who has been licensed to practice dentistry in the State of New York since 1959.After service in the United States Army and a short period of employment by another dentist, Martin began a private dental practice in 1962, which practice he continued through the years at issue. In 1968, Martin worked six days a week, ten hours a day, and took no vacation. In 1969, he worked five days a week from 9 a.m. to 5 p.m., and took no vacation. In both years, a large part of his professional income was paid by Medicaid. Martin had a bank account for his dental practice at Manufacturers Hanover Trust Company (account no. 0-35289). He also deposited business receipts to thirteen other bank and brokerage accounts, including *429 accounts in the name of Paul and Anna Cooperberg, his parents, and accounts in the name of Martin and Dorothea Cooperberg. The record does not reveal the identity of Dorothea Cooperberg. Martin did not keep records from which his correct taxable income could be computed. During the taxable years 1968 and 1969, Martin made deposits to bank and brokerage house accounts, as set forth below: [SEE TABLE IN ORIGINAL] During the taxable years 1968 and 1969, Martin received checks from Medicaid for dental services rendered and deposited those checks as set forth below: [SEE TABLE IN ORIGINAL] The computation of petitioners' understatement of taxable income for 1968 and 1969 is as follows: [SEE TABLE IN ORIGINAL] Petitioners' tax returns for 1968 and 1969 were prepared by an accountant. Martin provided the accountant with the bank statements and cancelled checks from his business account, bills, and forms 1099 reporting interest on other accounts. He did not advise his accountant that he had deposited some professional income to accounts other than his business account. Respondent's examination of petitioners' income tax returns for 1968 and 1969 began on June 30, 1970. *430 On October 19, 1970, petitioners filed an amended return for the year 1968, which was prepared on the basis of information provided by the City of New York regarding the Medicaid payments made to Martin. That information was incorrect. On September 20, 1973, a two count Criminal Information was filed against Martin, charging him with wilfully attempting to evade his income taxes for the years 1968 and 1969. On January 25, 1974, Martin pleaded guilty as charged for the year 1968 and the United States District Court entered its judgment pursuant thereto. Martin was sentenced to three months imprisonment and fined $5,000. He was incarcerated in the Federal Correction Institute in Manhattan from May 3, 1974, to July 25, 1974. Prior to the expiration of the time prescribed by section 6501(a), for the assessment of income tax due from the petitioners for the taxable year 1969, the petitioners and the respondent, on January 26, 1973, timely executed an agreement in writing pursuant to the provisions of section 6501(c)(4) extending the period for the assessment of tax due for said year to June 30, 1974. The statutory notice of deficiency setting forth the respondent's determination *431 of the petitioners' income tax liability for the taxable years 1968 and 1969 was sent to the petitioners' at the address shown on their income tax returns (including the amended 1968 return) by certified mail on June 26, 1974, which date was prior to the expiration of the period for assessment for the year 1969 as duly and timely extended under the agreement in writing executed by both the petitioners and the respondent. [2]
ULTIMATE FINDINGS OF FACT Petitioners had unreported taxable income in the amount of $97,723.60 in the year 1968 and in the amount of $18,047.91 in the year 1969. At least part of the deficiency for the years 1968 and 1969 is due to fraud on the part of Martin. OPINION 1. Jurisdiction
At trial, *432 petitioners moved to dismiss the case for lack of jurisdiction on the ground that respondent had not mailed the statutory notice of deficiency to Martin's last known address. See section 6212. Petitioners' motion was denied subject to the right to introduce evidence and to argue the motion on brief. Petitioners did not file a brief and no evidence was introduced at trial which would support petitioners' motion. Regardless of whether Martin's last known address was his home in Holliswood, New York, to which the statutory notice was mailed, or the Federal Correction Institute in Manhattan, New York, where he was imprisoned, the fact is that he received the notice 60 days before the deadline for filing a petition in the Tax Court. See section 6213. Moreover, a timely petition was in fact filed on September 16, 1974.Under these circumstances, the statutory notice of deficiency herein is clearly valid. Goodman v. Commissioner, 71 T.C.     (Mar. 5, 1979) (pp. 7-8, slip opinion); Zaun v. Commissioner,62 T.C. 278, 280 (1974); Clodfelter v. Commissioner,57 T.C. 102, 107 (1971), affd. 527 F.2d 754 (9th Cir. 1975); Lifter v. Commissioner,59 T.C. 818 (1973). *433 Petitioners' reliance on DiViaio v. Commissioner,539 F.2d 231 (D.C. Cir. 1976), revg. an unreported Tax Court order of dismissal dated March 14, 1975, is misplaced. In that case, the notice of deficiency was not mailed to the taxpayer, but was mailed to the warden of the penitentiary where he was incarcerated with instructions to deliver it to the taxpayer. It was not delivered until 80 days after it was mailed, and the taxpayer was prejudiced by the delay in that the delay, combined with his being moved to another penitentiary, resulted in his filing a petition with this Court after the 90-day deadline prescribed by section 6213. 2.Due Process
Petitioners claim that they were denied due process of law in that respondent did not provide them with an opportunity for a hearing before issuing the statutory notice of deficiency.[3] Their contention is totally without merit. Rosenberg v. Commissioner,450 F.2d 529, 532-533 (10th Cir. 1971), affg. T.C. Memo. 1970-201; Schwager v. Commissioner,64 T.C. 781, 787 (1975). See Cataldo v. Commissioner,60 T.C. 522 (1973), affd. per curiam 499 F.2d 550 (2d Cir. 1974). *434 3. Deficiencies in Income Tax
Respondent determined deficiencies in petitioners' income tax for the years 1968 and 1969, using the bank deposits method. Petitioners do not protest the use of this method, which is clearly proper, since they failed to keep records from which correct taxable income could be determined. See section 446(a); Holland v. United States,348 U.S. 121, 132 (1954); Estate of Mason v. Commissioner,64 T.C. 651, 656 (1975), affd. by order 566 F.2d 2 (6th Cir. 1977), and cases cited thereat. Petitioners have the burden of proving that respondent's determination is incorrect. Rule 142(a), Tax Court Rules of Practice and Procedure; Estate of Mason v. Commissioner,supra at 657, and cases cited thereat. The only evidence presented by petitioners was Martin's general testimony that approximately *435 90 percent of his business receipts were from Medicaid in both years at issue. Although such testimony would support the figures reported on petitioners' 1969 return, it does not explain the excess of bank deposits over reported income. Unidentified deposits, in the absence of proof to the contrary by the taxpayer, represent taxable income at least where a source of income (in this case Martin's medical practice) is present. Ruark v. Commissioner,449 F.2d 311, 312 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-48; Bernstein v. Commissioner,267 F.2d 879, 881 (5th Cir. 1959), affg. T.C. Memo. 1956-260. Thus, even if we were to accept Martin's uncorroborated testimony, which we are not bound to do, [4] we would still hold that petitioners have failed to carry their burden of proof that they did not have the amounts of omitted income for 1969 as determined by respondent. As to 1968, they have similarly failed to carry their burden of proof. Respondent's determination is consistent with Martin's testimony that approximately 90 percent of his receipts were from Medicaid (see pp. 7-9, supra) and petitioners have not presented *436 any probative evidence that contradicts respondent's determination. 4. Additions to Tax for Fraud
Respondent determined that part or all of the understatements in petitioners' income was due to fraud on the part of Martin. The burden of proving fraud is on respondent and he must satisfy this burden by clear and convincing evidence. Sec. 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure; Kreps v. Commissioner,351 F.2d 1, 7 (2d Cir. 1965), affg. 42 T.C. 660 (1964); Foster v. Commissioner,487 F.2d 902, 903 (6th Cir. 1973), affg. per curiam T.C. Memo. 1972-188; Marcus v. Commissioner,70 T.C. 562, 577 (1978). As to 1968, there is no question that respondent has *437 carried his burden. Martin pleaded guilty to wilfully attempting to evade his income tax for 1968 and the United States District Court entered its judgment on the basis of his plea. He is, therefore, collaterally estopped to deny fraud for that year. Amos v. Commissioner,43 T.C. 50 (1964), affd. 360 F.2d 358 (4th Cir. 1965); Arctic Ice Cream Co. v. Commissioner,43 T.C. 68 (1964). See Neaderland v. Commissioner,424 F.2d 639, 642 (2d Cir. 1970), affg. 52 T.C. 532 (1969). [5]
To prove fraud with respect to 1969, respondent must show Martin intended to evade taxes which he knew or believed to be owing. Cefalu v. Commissioner,276 F.2d 122, 128 (5th Cir. 1960), *438 affg. T.C. Memo. 1958-37; Marcus v. Commissioner,supra. He need not prove the exact amount of the underpayment that is due to fraud but only that some portion of the deficiency is attributable thereto. Otsuki v. Commissioner,53 T.C. 96, 105 (1969). Fraud will not be imputed or implied and mere suspicion of fraud is insufficient. Carter v. Campbell,264 F.2d 930 (5th Cir. 1959); Estate of Mazzoni v. Commissioner,451 F.2d 197 (3d Cir. 1971), affg. T.C. Memo. 1970-37; Green v. Commissioner,66 T.C. 538, 549 (1976). Nevertheless, since fraud can seldom be established by direct proof, it may be based upon circumstantial evidence and reasonable inferences drawn from the evidence.See Marsellus v. Commissioner,544 F.2d 883 (5th Cir. 1977), affg. T.C. Memo. 1975-368; Stone v. Commissioner,56 T.C. 213, 224 (1971); Otsuki v. Commissioner,supra at 106. Fraud may be inferred from "any conduct, the likely effect of which would be to mislead or conceal." Spies v. United States,317 U.S. 492, 499 (1943). *439 The record is replete with evidence of such conduct. First, Martin deposited only a fraction of his business receipts to his business bank account and deposited some of such receipts to accounts in the names of others. See Estate of Upshaw v. Commissioner,416 F.2d 737, 741 (7th Cir. 1969), affg. T.C. Memo. 1968-123; Estate of Brame v. Commissioner,25 T.C. 824, 830-31 (1956), affd. per curiam 256 F.2d 343 (5th Cir. 1958). Martin testified that his purpose in so doing was to hide his assets from his wife, but the fact that some receipts were deposited to accounts held jointly in his and his wife's names casts doubt on his testimony. Moreover, even if this were his purpose, it would not justify a knowing understatement of his tax. Boyett v. Commissioner,204 F.2d 205 (5th Cir. 1953), affg. a Memorandum Opinion of this Court; Draper v. Commissioner,32 T.C. 545, 563 (1959); Chesbro v. Commissioner,21 T.C. 123, 130 (1953), affd. per curiam 225 F.2d 674 (2d Cir. 1955). Second, Martin failed to keep books and records with regard to his dental practice. See Spies v. United States, supra; *440 Estate of Upshaw v. Commissioner,supra at 741. In light of Martin's educational background and the fact he had been engaged in the private practice of dentistry since 1962 and, thus, must have been aware of the difficulties of preparing an accurate tax return without adequate books and records, we find it impossible to attribute his failure to keep books and records to a lack of knowledge of his tax obligations. Cf. Halle v. Commissioner,175 F.2d 500 (2d Cir. 1949), affg. 7 T.C. 245 (1946). Third, Martin failed to provide his accountant with accurate information for the preparation of his tax return. See Farber v. Commissioner,43 T.C. 407, 419-420 (1965). He attempts to negate the impact of this fact by casting it as an oversight caused by his marital problems and his poor mental health. Yet, his return for the year 1969 was not due until April 15, 1970, by which time these problems had been solved. See Lord v. Commissioner,525 F.2d 741, 745 (9th Cir. 1975), revg. 60 T.C. 199 (1973); Beaver v. Commissioner,55 T.C. 85, 93-94 (1970). [6] Furthermore, the amounts *441 deposited to accounts other than his business account were so large that it is hard to believe he would overlook them. Halle v. Commissioner,supra.
We are fully cognizant of the fact that we cannot find fraud simply on the basis of petitioners' failure to carry their burden of proof that Martin did not have unreported income represented by the unexplained bank deposits, which failure stems largely from our unwillingness to accept the testimony of Martin, who was the only witness at the trial.But we think that there are sufficient badges of fraud in the record as a whole to justify our concluding that respondent has carried his burden of proof in respect of 1969 and we so hold.Cf. Halle v. Commissioner,supra.[7] In this connection, we note particularly that a likely source of the unreported income has been shown, i.e., Martin's dental practice, and that there is not the slightest suggestion in the record that the unexplained deposits came from any nontaxable source. See United States v. Nunan,236 F.2d 576, 582 (2d Cir. 1956); Stinnett v. United States,173 F.2d 129 (4th Cir. 1949). *442 Cf. United States v. Massei,355 U.S. 595 (1958); Holland v. United States,supra; Shahadi v. Commissioner,266 F.2d 495, 500 (3d Cir. 1959), affg. 29 T.C. 1157 (1958). Moreover, we again emphasize that our conclusion as to the existence of fraud in respect of the taxable year 1969 need only be based upon the finding that "somepart of the underpayment is due to fraud" (emphasis added) (sec. 6653(b)) and that we are not required to find that all of the income claimed by respondent was fraudulently unreported. See p. 18, supra. We are satisfied that the evidence of record herein clearly and convincingly shows that some of Martin's income from his medical practice was not included in petitioners' income tax returns and that such omission was knowing and intentional on Martin's part.Cf. Otsuki v. Commissioner,supra.
5.Statute of Limitations
Our decision on the fraud issue also disposes of petitioners' assertion that the statute of limitations bars the assessment and collection of the deficiencies *443 determined herein. Sec. 6501(c)(1). In addition, for the year 1969, the parties have stipulated that they executed an agreement extending the period of assessment of tax due for 1969 to June 30, 1974, and that the statutory notice of deficiency was issued prior thereto. The extension agreement was executed on January 26, 1973, well within the three year period for assessment and consequently the deficiency notice was timely issued. Sec. 6501(c)(4). 6.Innocent Spouse Provision
Petitioners allege in their petition that Doris is not liable for the deficiencies in tax by virtue of the "innocent spouse provision." Sec. 6013(e). That section relieves a spouse of liability on sums omitted from a joint return if three basic conditions are met: (1) the omission is in excess of 25 percent of the amount of gross income stated in the return; (2) the spouse in signing the return does not know of, and had no reason to know of, such omission; and (3) taking into account all the facts, including whether or not the spouse significantly benefited from the omitted items of gross income, it would be inequitable to hold her liable. See Fox v. Commissioner,61 T.C. 704, 716 (1974). *444 Doris did not testify as to her knowledge regarding Martin's income. Nor is there any evidence as to their standard of living or the handling of family finances. Admittedly, there was some vague testimony regarding marital problems but we think this falls far short of the mark to permit Doris to come within the exception to the general rule of joint and several liability on joint returns. See Sonnenborn v. Commissioner,57 T.C. 373 (1971). We hold that petitioners have failed to carry their burden of proof as to the second and third conditions. Decision will be entered for respondent.
Footnotes
1. Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. Respondent avers in his answer that an agreement extending the period for assessments was signed for the year 1968 also. However, the parties' stipulation of facts refers to 1969 only and no evidence of an agreement with respect to 1968 was presented. In view of our finding on the fraud issue for 1968, the assessment and collection of the 1968 deficiency is not barred by the statute of limitations in any event. See pp. 17-18, 23, infra↩.
3. Petitioners actually claim they were denied a hearing prior to assessment. However, as no assessment has been made or generally can be made until the decision of this Court has become final (see section 6213(a)), we have interpreted petitioners' argument as relating to the notice of deficiency.↩
4. See Fleischer v. Commissioner,403 F.2d 403, 406 (2d Cir. 1968), affg. T.C. Memo. 1967-85; Cohen v. Commissioner,148 F.2d 336 (2d Cir. 1945), affg. a Memorandum Opinion of this Court, dated March 18, 1944; Leong v. Commissioner,T.C. Memo. 1977-19↩, and cases cited therein, affd. by unpublished order, 78-1 U.S.T.C. par. 9152 (2d Cir. 1977).
5. Petitioners filed an amended return for the year 1968 on which they reported gross business receipts of $62,107.79. See p. 11, supra. However, it is well established that the addition to tax for fraud is applicable to the difference between the tax liability and the tax shown on the original return. Papa v. Commissioner,464 F.2d 150 (2d Cir. 1972), modifying T.C. Memo. 1970-90 followed in Stewart v. Commissioner,66 T.C. 54↩ (1976).
6. See also, Gorman v. Commissioner,T.C. Memo. 1972-215↩.
7. See also Insolrea v. Commissioner,T.C. Memo. 1977-424↩.